**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 18-CR-386 (APM) (DAR)** |
| | : | |
| **JUAN EVERETT JONES,** | : | |
| **also known as "Hollywood,"** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion for pretrial detention of Defendant Juan Everett Jones, also known as "Hollywood." The defendant's charges include conspiring to violate several firearms laws including making false statements in order to obtain firearms from firearm dealers, transferring firearms to prohibited persons, and possessing firearms with obliterated serial numbers.

**BACKGROUND AND STATEMENT OF FACTS**

On July 26, 2018, ATF received information that a female had been purchasing a large amount of firearms in Northern, Virginia over the course of the previous month. According to Federal Firearm Transaction Records, the individual referred to in the indictment as Co-Conspirator-2 ("CC-2") had purchased approximately 24 firearms over the previous 30 days.

On July 27, 2017, the Virginia State Police notified ATF agents that CC-2 was at a gun show in Chantilly, Virginia attempting to purchase firearms. ATF agents arrived at the gun show and observed Co-Conspirator One ("CC-1") and CC-2 with each other. After they ordered multiple firearms, ATF agents observed CC-1 and CC-2 walk to their car and place the firearms in the rear passenger seat. ATF agents followed them back into the District of Columbia and

approached the vehicle after it stopped in the area of the 600 block of Mellon Street, Southeast. CC-1 was in possession of a Jimenez Arms Inc. .380 semiautomatic pistol. The firearm was located in CC-1's pants pocket. Agents also located two more firearms in the back seat, and a fourth firearm on the front passenger seat floorboard. In total, four firearms were taken from CC-1 and CC-2 at this time.

Law enforcement searched the home of CC-1 and CC-2 in Southeast, Washington, D.C. and recovered the following evidence:

- A smith and Wesson .40 caliber semiautomatic handgun with a laser sight, obliterated serial number, and four ammunition rounds in the magazine,

- One rifle magazine,

- One Beretta 9mm pistol with the serial number plate removed,

- One Raven Arms .25 caliber firearm with the serial number obliterated,

- One Smith and Wesson .380 Caliber semiautomatic pistol with the serial number obliterated,

- An empty gun box for a Springfield Armory Firearm,

- A ziplock bag containing 3 holsters, 1 rifle magazine, 2 magazine holders, and a magazine loader,

- One Taurus .45 caliber semiautomatic pistol with the serial number obliterated,

- An empty Smith and Wesson gun box,

- An empty Taurus gun box,

- A cardboard box with gun locks, 6 magazines, and one black holster, and

- An Adidas shoebox containing sanding tools, hand files, and a semiautomatic

magazine.

Through the investigation, ATF Agents learned that CC-1 and CC-2 were taking orders for firearms from various individuals, and then traveling to gun stores throughout Virginia and buying those firearms. The Defendant Juan Jones is one of the individuals who was repeatedly in contact with CC-2 for the purpose of illegally buying firearms.

For example, on the day of CC-1 and CC-2's arrest, before they traveled to the gun show in Chantilly, Virginia, Defendant Jones asked CC-2 through text messages to buy him a "Mac(45 caliber) machine gu[n]. or Uzi(9mm)machine g[[un]." Defendant Jones also asked CC-2 to look for a laser sight for the firearms, referring to it as a "beam." Defendant Jones further told CC-2 that he would pay up to $1,500 for either weapon. Defendant Jones also referenced two firearms he had purchased earlier in the week from CC-2 and asked CC-2 to buy him a "20 or 30 rounder clip for the 40 n 45" he bought from CC-2 earlier in the week.

In fact, a review of the text messages between CC-2 and Defendant Jones reveal that between the dates of July 23, 2018 and July 27, 2018, the two communicated on a near daily basis regarding firearms for sale. Defendant Jones repeatedly tried to buy large number of firearms from CC-1 and CC-2. On July 24, 2018, Defendant Jones provided CC-2 with his home address on Rochelle Avenue in Maryland so that CC-2 could travel to his address and sell him two firearms. Defendant Jones ultimately did purchase two firearms from CC-2, both with obliterated serial numbers. The entire transaction is laid out and preserved in text message conversations.

As outlined in the indictment, Defendant Jones continued to engage in firearm purchase negotiations with CC-2 and attempted to purchase a .22LR caliber firearm for $700 on July 25,

2018 but it was already sold to a separate customer. On July 26, 2018, Defendant Jones sent CC-2 a text message stating "Hey lil mama. Send me what u got now. Pics n the numbers. Pleeeease work wit me." The two then exchanged photos of firearms for sale and discussed the pricing.

On November 15, 2018, ATF Agents executed search warrants at the Defendant's residence at 7401 Lanham Lane, Fort Washington, Maryland, 20744. ATF Agents recovered a 9mm semi-automatic pistol, loaded with 17 rounds of ammunition, and one Taurus .40 caliber pistol with an obliterated serial number, containing ten rounds of ammunition. Various rounds of ammunition were also found in the residence. The defendant's brother was home at the time of the search warrant and claimed that he had never seen the firearms before.

Agents also executed a search warrant at 1908 Rochelle Ave, Capitol Heights, Maryland. Defendant Jones routinely spends the night at this address. This is also the address where CC-2 traveled to sell Defendant Jones two firearms on July 24, 2018. Aside from approximately 15 grams of marijuana, no contraband was found inside the home.

Defendant Jones was on parole supervision at the time and not living at his registered address. Following this encounter with police, Defendant Jones failed to report the police contact to his parole officer.

## APPLICABLE LAW

Here, the Government has requested a pretrial detention hearing under a provision of the Bail Reform Act, 18 U.S.C. § 3142(f)(1), which provides that a judicial officer "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community" upon motion for a case that involves "(E) any felony

4

that is not otherwise a crime of violence . . . that involves the possession or use of a firearm."
The Government alternatively requests that the defendant be held pursuant to 18 U.S.C. §
3142(f)(1)(D) because he has multiple felony convictions.

The Bail Reform Act of 1984, 18 U.S.C. § 3142 et seq., provides that if a judicial officer
finds by clear and convincing evidence that "no condition or combination of conditions will
reasonably assure the appearance of the person as required and the safety of any other person and
the community, such judicial officer shall order the detention of the person before trial." 18
U.S.C. § 3142(e)(1), (f)(2)(g). Even if the defendant does not pose a flight risk, the danger to the
community alone is a sufficient reason to order pretrial detention. *United States v. Lee*, 195
F.Supp.3d 120, 124 (D.C. 2016), *citing United States v. Salerno*, 481 U.S. 739, 754–55, (1987);
*United States v. Simpkins*, 826 F.2d 94, 98 (D.C.Cir.1987). Under the statute, pretrial detention
must be supported by clear and convincing evidence when the justification involves the safety of
the community, and a preponderance of the evidence when the justification involves the risk of
flight. *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). Furthermore, under the Bail
Reform Act the Government may proceed by way of proffer. *Id.*

In making a pretrial detention decision, by statute a judicial officer must consider four
factors:  1) the nature and circumstances of the offense charged, including whether the offense
involves such things as the use of a firearm; 2) the weight of the evidence against the person; 3)
the history and characteristics of the person; and 4) the nature and seriousness of the danger to
any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Here, the first factor, the nature and circumstances of the offenses charged, clearly weigh
in favor of detention. A grand jury found probable cause to believe that the Defendant was

actively conspiring with CC-1 and CC-2 to illegally obtain firearms, some with laser sights, fully automatic, with high capacity magazine, and obliterated serial numbers. The Defendant was offering substantial amounts of money for CC-2 to purchase these firearms on his behalf, because he is precluded from doing so as a convicted felon.

All the while, the Defendant was still serving a parole sentence for Aggravated Assault While Armed, Mayhem While Armed, and Possession of a Firearm in Furtherance of a Crime of Violence. The nature of the offense is serious because the Defendant was causing another individual to lie on firearm transaction forms and buy him firearms, thus skirting the firearm regulations, all while he was on parole for a violent firearm offense.

The second factor, the weight of the evidence, also clearly weighs in favor of detention. ATF Agents recovered two firearms from the Defendant's home on Lanham Road in Maryland. Although they were found in a shoebox in his brother's bedroom closet, the Defendant's brother stated that he had never seen the firearms before. Furthermore, the .40 caliber with the obliterated serial number matched the make and model of the firearm sold to the Defendant by CC-2 on July 24, 2018.

Moreover, the Defendant repeatedly sent CC-2 text messages requesting specific firearms, high capacity firearm magazines, and laser sights. These are all captured on a cell phone download from CC-2's telephone. Through these text message strings, the Defendant goes by the name "Hollywood," his known nickname. The Defendant has also been identified by photograph as one of the individuals who was purchasing firearms from CC-1 and CC-2.

The third factor, the history and characteristics of the person, also weigh in favor of detention. In this case, the Defendant has prior convictions for serious violent crimes, Mayhem

While Armed, Aggravated Assault While Armed, and Possession of a Firearm During a Crime of Violence. The Defendant was sentenced to 12-36 years in prison and was on parole at the time he was acquiring and seeking to purchase firearms. According to the oral proffer by the pre-trial services representative at the Defendant's initial appearance, he was not in compliance with the terms of his parole. He failed to report police contact and he was not living at his registered address

      The fourth factor, the nature and seriousness of the danger to any person or the community posed by the Defendant's release, also weighs in favor of detention. As discussed above, the Defendant is on parole for serious violent felonies. He was ordering dangerous firearms. He is prohibited from possessing firearms. Agents found two firearms inside of the Defendant's home, one with an obliterated serial number, and one with a high capacity magazine. The Defendant has shown that he will not comply with the terms of his parole and that he will violate his parole in serious ways, such as illegally purchasing firearms. Allowing the Defendant to be released creates a substantial and unnecessary risk to the safety of the community.

      In the end, given all of these facts and circumstances, no condition of release or combination of conditions, can ensure that the Defendant does not continue to violate his parole and continue to illegally possess firearms. The weight of the evidence and the gravity of the alleged offenses provide a compelling justification for the continued detention of the Defendant until this case is resolved. Placing the Defendant back into the community poses an unnecessary risk to the safety of the community, considering his violent criminal history and the nature of the firearms involved in this case.

WHEREFORE, the Government requests that the Court order the Defendant to be detained without bond pending resolution of this case.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By:       _____/s/_____

KEVIN L. ROSENBERG
Assistant United States Attorney
DC Bar No. 491825
555 4th Street, N.W., Room 4124
Washington, D.C. 20001
(202) 252-7833
Kevin.Rosenberg@usdoj.gov